(No. 20062.

EDWARD M. MILLER, Defendant in Error, *vs.* THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed February 19, 1932.*

A. A. McLAUGHLIN, and I. C. BELDEN, (EDGAR R. HART, and NELSON J. WILCOX, of counsel,) for plaintiff in error.

FINN & MILLER, for defendant in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Edward M. Miller, guardian of the estate of Samuel Letizia, a minor, brought suit in the superior court of Cook county against the Chicago and Northwestern Railway Company, the Pennsylvania Railroad Company and the Pittsburg, Cincinnati, Chicago and St. Louis Railroad Company, to recover damages for personal injuries sustained by Letizia. Each of the defendants filed a plea of the general issue and a special plea of non-ownership, non-possession and non-operation in manner and form as alleged in the declaration. There was a trial by jury. At the close of plaintiff's case the trial court directed a verdict for the Pennsylvania Railroad Company and the Pittsburg, Cincinnati, Chicago and St. Louis Railroad Company, which two defendants will hereinafter be designated as the Pennsylvania Company. Motions for a directed verdict in its favor were made by the Chicago and Northwestern Railway Company (hereinafter designated as plaintiff in error) at the close of the plaintiff's case and also at the close of all the evidence but were overruled. The jury returned a verdict in favor of plaintiff and damages were assessed at $25,000. The judgment entered was affirmed by the Appellate Court for the First District, and the cause is here on *certiorari*.

Prior to January, 1897, plaintiff in error and the Pennsylvania Company owned, occupied and operated separate rights of way and railroad tracks on the surface immediately adjacent to each other, extending north and south along and adjacent to Rockwell street, in the city of Chicago, crossing Jackson boulevard and VanBuren street and other streets to the north and south thereof. The right of

way of plaintiff in error lay west of that of the Pennsylvania Company. On January 18, 1897, the city of Chicago adopted an ordinance by its title "requiring" the Pennsylvania Company and plaintiff in error "to respectively elevate the plane of certain of their railway tracks within the city of Chicago." In its body this ordinance provides that said railroads "are, respectively, hereby ordered and required to elevate the plane of their road-beds and tracks within certain limits of the city of Chicago in manner and upon the conditions hereinafter specified." Then follow sections prescribing the amount of elevation and requiring subways to be established at certain street intersections, it being provided that the Pennsylvania Company "shall construct the part of such subways, and the approaches to such subways, lying east of the Chicago and Northwestern Railway Company produced across said streets, and the last named company shall construct the part of such subways, and the approaches to such subways, lying west of said line;" that each company "shall pave the entire length and width of the roadway in such portion of the subways as are required to be constructed by that company;" that "each of said railroad companies shall also finish and pave the sidewalks in such portions of said subways as they are, respectively, required hereby to construct, for their entire length and width;" that "such portions of the approaches to said subways as are required to be constructed by any of said railroad companies shall be graded by such railway company at its own expense according to the requirements and specifications of this ordinance," and that "all of said work shall be done to the satisfaction of the department of public works of said city but at the expense of said railroad companies, respectively, as hereinbefore stated." Section 6 requires that all streets in which subways are required be crossed on suitable bridge superstructures of prescribed nature, gives the right to construct retaining walls in the streets in any case where it shall be found necessary to

construct any retaining wall in connection with the approach to subways, and then proceeds: "The embankments on which said elevated tracks shall be carried between the intersecting streets, boulevards or avenues shall be composed of sand, gravel, loam, clay, broken stone, or whatever else may compose the surplus material excavated from the subways and from the foundation pits and trenches along· the line of said work, and their side slopes shall be defined by the natural angle of repose of the material out of which the embankments are constructed or such embankments shall be carried between retaining walls of stone or brick masonry, but when such retaining walls are not used, the right of way of said railway companies shall be enclosed with fences or otherwise, in compliance with the present ordinance of the city relating to the fencing of railway tracks." By the terms of section 10 the Pennsylvania Company and plaintiff in error "are hereby severally required to commence the work of elevating the planes of their respective railway tracks required by this ordinance to be elevated, within ninety (90) days after the filing of their two (2) agreements mentioned in section 15 of this ordinance." Section 15 thus referred to provides that the ordinance shall be null and void unless the Pennsylvania Company and plaintiff in error "shall each, through its authorized officers, file with the mayor of the city of Chicago, within sixty (60) days from the passage of this ordinance, an agreement duly executed, whereby such railway company shall undertake to do and perform all the matters and things required of it by this ordinance, and whereby such railway company shall bind itself, in case of non-performance of the matters and things in this ordinance required of it, to pay to the city of Chicago the sum of fifty thousand (50,000) dollars as and for liquidated damages arising to such city from such non-performance. Such agreement on the part of the Chicago and Northwestern Railway Company shall also bind that company to dismiss, with the

consent of the city and without costs to either party, the proceedings now pending in the Supreme Court of the United States under a writ of error from that court bringing up for review the validity of the judgment for the opening of Taylor street." Section 11 provides that "said railway companies, jointly or severally, as the case may be, shall, at least ten (10) days prior to the commencement of any part or parts of said work which is to be within the limits of or abutting upon any street of said city, submit to the commissioner of public works, for his approval, complete plans and specifications of such part of said proposed work, for the purpose of ascertaining whether the same are in strict accordance with the provisions of this ordinance, and after the approval of such plans and specifications by the commissioner of public works the said work shall be constructed in accordance therewith and to the satisfaction of said commissioner of public works and not otherwise, except as herein otherwise provided." Section 12 provides that "when and in case said railways, or either of them, shall be elevated in accordance with the provisions of this ordinance, and when and in case sections of said elevated railways, or either of them, shall be completed, it shall be unlawful for any person or persons, save employees of the company owning or operating said elevated railway, in the discharge of their duties, to enter upon or walk across said structure at any point." A further section of the ordinance provides that wherever in the ordinance "any of said railway companies is required to pave any subway or lay any sidewalk, then such company is hereby required to keep such pavement and sidewalk forever in good repair at its own expense to the satisfaction of the city of Chicago." Separate acceptances were filed in accordance with the provisions of section 15.

During the year 1897 the tracks were elevated. The work was done under the direction of an elevation engineer then employed generally by plaintiff in error but who rep-

resented both plaintiff in error and the Pennsylvania Company in this particular piece of construction, being on the pay-roll of both. The cost of labor and materials was pro-rated between the two companies in proportion to the work done and materials furnished on their respective rights of way. One embankment was constructed, on top of which were the tracks of the Pennsylvania Company and plaintiff in error, lying the same distance apart as when they were on the surface, the west rail of the west track of the Pennsylvania Company being eight feet from the east rail of the east track of plaintiff in error. On the east and west sides of this embankment retaining walls were built six to eight feet in height, with heavy coping stones on top. These stones were one foot thick, three feet wide and five feet long. Some years prior to September 2, 1926, several of the coping stones fell out of the wall on the east side of the embankment. Prior to that date dirt had been deposited immediately adjacent to the wall, raising the surface of the street and adjacent lot so that the height of the wall above the dirt deposited was materially less than it was before such deposit. At the places where the coping stones were absent, dirt and ballast from the Pennsylvania Company tracks and embankment had fallen down and over the wall, making at such places, together with the dirt deposited there, a continuous slope from the top of the embankment to the natural surface to the east. Boys climbed up the embankment at such places and went upon the tracks. On September 2, 1926, the Letizia boy, then about ten years of age, together with a number of other boys older than himself, climbed upon the embankment on the east side thereof, between Jackson boulevard and VanBuren street at a place where a coping stone was absent, and, crossing the Pennsylvania Company tracks, climbed upon the cars of a slowly moving freight train of plaintiff in error which was proceeding in a southerly direction. The Letizia boy was the last one to get on, and as he was climbing up the

side ladder of a car he came in contact with a steel girder forming the superstructure of the steel viaduct carrying the track over Congress street and was caused to fall from the car in such a manner as to permit a wheel thereof to pass over his right leg and cause injuries on account of which it was amputated a few inches above the knee.

In cases of the character of this it is necessary to aver and prove three elements to make out a cause of action: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure of the defendant to perform that duty; and (3) an injury to the plaintiff resulting from such failure. (*McAndrews* v. *Chicago, Lake Shore and Eastern Railway Co.* 222 Ill. 232.) The facts must be sufficient to bring the right of recovery within some rule of law, statutory or common. If negligence is relied on as a ground of recovery, the facts constituting it must be succinctly stated and proved substantially as stated. When the plaintiff sets out in his declaration the negligent acts of the defendant relied on as a basis for recovery he must establish those negligent acts, and cannot recover by reason of negligent acts of the defendant not averred in the declaration as a ground of recovery even though the acts proven show the defendant was guilty of negligence which caused the injury. *Buckley* v. *Mandel Bros.* 333 Ill. 368; *Camp Point Manf. Co.* v. *Ballou,* 71 id. 417.

The declaration in the present case contains three counts, each of which refers to the elevation of the tracks under and by virtue of the ordinance of January 18, 1897. The negligence alleged in each count is, that "in elevating the tracks under said ordinance said defendants had constructed certain retaining walls of stone, especially upon and along the east side of said right of way at the place aforesaid, and that on the day aforesaid, and for a long time prior thereto, said defendants had carelessly and negligently permitted and allowed said retaining wall at the place afore-

said to fall into decay and to become and remain defective, broken down and covered up by the natural angle of repose of said materials and divers passages, open places and holes to be and remain in the same, so that said embankment lay in a gradual slope and furnished easy access to and from the tracks aforesaid." Each count further alleges that "said defendants had notice of the defective and insufficient condition of said retaining wall and of the custom of children of playing thereon, as aforesaid, or by the exercise of ordinary care should have had notice."

At the outset of their argument counsel for defendant in error say, after referring to several cases dealing with fencing statutes and ordinances in general: "The foregoing cases having decided all other questions of law involved, there remains only one principal proposition to be decided in the case at bar, and that proposition is: Whether or not, under the track elevation ordinance introduced in evidence in this case, the defendant owed to the public, including the plaintiff, the duty to maintain the wall in question. If it did owe such a duty then the defendant is liable." As thus defined the issue is a simple one, and the question of liability clearly must be determined adversely to the contention which counsel make. In reaching this conclusion we find it unnecessary to consider the argument of plaintiff in error that the ordinances of the city of Chicago requiring the fencing of railroad tracks were abrogated by "An act to provide for the regulation of public utilities," (Laws of 1913, p. 459,) and "An act concerning public utilities," (Laws of 1921, p. 702,) because, even though the ordinance relied upon be taken to be in full force and effect in all details, under the issues as here drawn plaintiff in error cannot be held liable for the injury sustained. There is no principle of the common law which compels one person or corporation to fence the land of another. (*Alton and Sangamon Railroad Co.* v. *Baugh,* 14 Ill. 211.) It has been held that statutes may impose upon railroad companies the

duty of fencing their rights of way. Where there is such legislation the legislative body fixes the standard of duty and declares the liability, and only such persons or classes of persons may recover as come within the contemplation of the statute. (*Bischof* v. *Illinois Southern Railway Co.* 232 Ill. 446; *Lynch* v. *Baltimore and Ohio Southwestern Railroad Co.* 240 id. 567.) But the wall in question was on the property of another owner altogether. By the terms of the ordinance here invoked, was plaintiff in error required to build or maintain a wall which was not on its own property? In the last analysis counsel do not seem to so contend, and it must be said that there is no apparent basis for any such contention. If the ordinance did not require plaintiff in error to build or maintain said wall, how can it be said that under the ordinance it is chargeable with legal liability because it did not do something which the ordinance did not require it to do? And if, consequently, defendant in error cannot make use of the ordinance in reliance upon the principle that violation of a statute or ordinance may be, under certain circumstances, *prima facie* evidence of negligence, what place has it in this case?

An examination of the argument of counsel in detail indicates that the duty upon which they base their ultimate reliance is sought to be fastened upon plaintiff in error by virtue of an alleged "agreement" between plaintiff in error and the Pennsylvania Company whereby plaintiff in error "elected" to adopt as its own the wall on the Pennsylvania Company property and undertook to maintain it. Assuming the existence of such an agreement, there would immediately arise the question as to the right of a third person, not a party to it, to maintain an action for injuries resulting from its breach. It is unnecessary to give consideration to this problem, as we are convinced that the evidence discloses no sufficient basis for concluding that there was such an agreement as that upon which counsel insist. No claim is put forth that any contract in this particular was formally

executed. No showing is made as to the exact terms, specifications or limitations of the alleged undertaking. But to further their argument that the evidence discloses the existence of such an agreement counsel employ the ordinance as a background and seek to draw conclusions of fact by applying its alleged legal implications to such evidence as the record discloses. Their apparent premise is expressed in the words, "The obligation to protect both sides of its right of way from trespassers is imposed upon plaintiff in error by the ordinance." This premise can, of course, be correct only in so far as it implies that plaintiff in error was required to erect a fence or wall on its own property. If it is meant to go farther it cannot be accepted. In one place in their brief counsel say: "When this ordinance was passed the railroads might have constructed an embankment protected by fences, and the plaintiff in error might have maintained a fence on the west side of its embankment and a fence in the center, between the two rights of way; also it might have elected to build retaining walls, and, by using one or two tracks instead of three, might have constructed a retaining wall on the east side of its own embankment, and the Pennsylvania Lines might have done likewise. The fact that the center fence might have been upon the right of way or the retaining walls in the center might have been back to back did not make them impossible, and a strict compliance with the ordinance might have required such action, but everyone knows that from the standpoint of utility and economy such a compliance was not the most practical thing to do." In another part of their argument counsel say: "There was no space between the tracks of the Pennsylvania Lines and the tracks of the Chicago and Northwestern Railroad Company where a fence could be erected, and, of course, no possibility of a separate retaining wall at this point. The defendant being presumed to know the law, must have realized its obligation to protect both sides of the right of way." Here counsel seem to say

that because what the law actually required was an impossibility, plaintiff in error is to be held to have been bound to do something which the law did not require at all. Elsewhere they say that plaintiff in error "had several alternatives under this ordinance, either to construct its own walls on both sides of its right of way, to construct an embankment with sloping sides, enclosed by fences, on both sides of its right of way, or to construct a retaining wall or a fence between its right of way and that of the Pennsylvania railroad, or it could rely upon the retaining wall on the east side of the whole embankment." Manifestly, the ordinance made no mention of any such alternative as reliance by plaintiff in error upon a wall not on its own property. Counsel then conclude: "The only possible deduction that can be drawn from the evidence in this case is, that it entered into an agreement with the Pennsylvania Lines to construct the embankment jointly, and having done so it does not thereby escape its duty to protect the east side of its right of way from trespassers, and the only logical deduction that can be drawn from this evidence is that the plaintiff in error relied upon such construction as compliance with the ordinance, and therefore its duty to maintain this wall arises."

Counsel's reasoning may apparently be outlined as follows: (1) The ordinance required plaintiff in error to put either a wall or a fence upon each side of its right of way; (2) putting a wall or a fence upon each side of its right of way, as required by the ordinance, was either impracticable or impossible; (3) a wall was actually constructed upon the property of the Pennsylvania Company; (4) the elevation work was done by plaintiff in error and the Pennsylvania Company jointly; (5) the approval by the commissioner of public works of the city of Chicago of what was actually done "must be implied;" (6) in the absence of compliance with the ordinance no such approval would have been given; (7) it follows that plain-

tiff in error entered into an agreement with the Pennsylvania Company to maintain the wall, as contended. Drawing all warranted and reasonable inferences from the propositions thus urged, it cannot be said that the agreement relied upon by defendant in error can be held to be established. So far as the element of joint construction is concerned, analysis of the ordinance clearly demonstrates that it purported to deal throughout with the property and interests of the two railroads separately. That the work which it required severally might appropriately be undertaken jointly, however, is indicated by the provision of section 11 that plans and specifications might be submitted jointly or severally to the commissioner of public works. For present purposes no particular significance can be accorded to the fact that the work which was done was done jointly as distinguished from severally. The ordinance required the Pennsylvania Company to construct the wall in question, or, in lieu thereof, a fence. The wall was built. There is no showing that the cost thereof was assumed either in whole or in part by plaintiff in error. The evidence tends to show, on the contrary, that the cost was paid by the Pennsylvania Company. There is slight evidential basis in these considerations to uphold the making of an agreement whereby plaintiff in error undertook to do an act which had not been required of it, or to subject itself to a continuing future duty which could be performed only by going upon property not its own. Nor is materially greater force given to this evidence by invoking the argument that because the ordinance required certain specific things which were either impracticable or impossible, plaintiff in error must be held to have taken it upon itself to enter into an agreement to do something else which had not been prescribed at all. As to the matter of the alleged approval of the work by the commissioner of public works, we are apparently asked to assume that in the absence of any showing of disapproval of the work as actually done

there was affirmative approval of it; that inasmuch as the provisions of the ordinance requiring plaintiff in error to fence or wall its own right of way were not carried out, said official would not have given his approval unless the obligation was otherwise met; that such official took it upon himself to hold that the obligation could be met otherwise than by compliance with the terms of the ordinance, and that it follows that there was in existence the agreement upon which reliance is placed. That such argument fails to establish a sufficient evidential basis for recovery is obvious.

It is contended by counsel that the effect of denying recovery here will be to leave a wrong without a remedy. Waiving for the moment any question as to the determining force of such an argument, the present answer to it is that we must consider this case upon the basis of the issues presented by the record. Although counsel have referred in their briefs to the alleged obligation of plaintiff in error to build a wall or fence upon its own right of way and apparently would contend that liability would flow from violation of such duty, the negligence asserted is not based upon failure to perform any such duty. The ground relied upon for recovery is that plaintiff in error is liable for nonfeasance because it did not maintain a wall on another piece of property. From the conclusion that there can be no recovery under some one particular theory which is invoked it does not necessarily follow that a wrong is without a remedy.

The trial court erred in overruling the motions of plaintiff in error for a directed verdict, and the judgments of the Appellate Court and the superior court are reversed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgments reversed.*