(No. 22240.—

ALBERT OVERSTREET, Defendant in Error, *vs.* THE ILLINOIS POWER AND LIGHT CORPORATION, Plaintiff in Error.

*Opinion filed April 21, 1934—Rehearing denied June 7, 1934.*

E. BENTLEY HAMILTON, (HERBERT HAASE, H. M. STEELY, and H. M. STEELY, JR., of counsel,) for plaintiff in error.

379

LEWMAN & CARTER, and HUTTON & CLARK, (H. ERN-
EST HUTTON, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on writ of *certiorari* to review the
judgment of the Appellate Court for the Third District
affirming the judgment of the circuit court of Vermilion
county awarding damages to defendant in error, against
plaintiff in error, for injuries arising out of a collision of
an automobile in which he was riding as a guest, with the
rear of plaintiff in error's street car, commonly known as
a snow-sweeper.

Plaintiff in error argues here that there is no evidence
tending to show actionable negligence on its part but the
injury arose solely out of negligence on the part of de-
fendant in error. Motions to instruct the jury to find
defendant not guilty were tendered after the hearing of
plaintiff's case and at the close of all the evidence and
were refused.

The declaration consisted of one original count and
two additional counts. The original declaration alleged
that while defendant in error was riding as a guest in an
automobile going north on Vermilion street, in the city of
Danville, at 1:30 A. M. March 22, 1932, and while he was
observing due care for his own safety, plaintiff in error
by its servants so carelessly and negligently operated the
sweeper that the automobile in which defendant in error
was riding collided with it, causing injury. The first ad-
ditional count alleged that a violent snowstorm was rag-
ing to the extent that snow surrounded and obscured the
sweeper so that a person approaching it from the south
or rear could not see or know of its presence until within
five feet thereof, by reason whereof there was imminent
danger to persons traveling on the street, which plaintiff
in error by its servants knew or could by the exercise of

due care have known, and that there was no warning light on the sweeper that would give warning to persons approaching from the rear. It was also alleged that plaintiff in error by its servants carelessly and negligently permitted the sweeper to stand on the track without a warning light, and that by reason of such carelessness and negligence the automobile in which defendant in error was riding ran into the sweeper, whereby he was injured. The second additional count alleged that it was the duty of plaintiff in error to have exercised reasonable care to supply warning by a flagman, light or sound, or to otherwise notify persons traveling north along said street of the presence of the sweeper, and that plaintiff in error negligently failed to provide such warning, whereby defendant in error was injured. Plaintiff in error filed general and special demurrers to each count, which were overruled. It then filed pleas of the general issue.

This court will not examine the evidence to determine its weight but in a proceeding of this character will examine the record to determine whether there is any evidence which, taken with its reasonable intendments most favorable to the plaintiff, supports his cause of action. In other words, under the first assignment of error the question before this court is whether there is any evidence fairly tending to establish negligence on the part of plaintiff in error.

It appears from defendant in error's evidence that on the night of the accident a very severe snowstorm was raging in the city of Danville. Plaintiff in error's assistant superintendent and another of its employees were operating an electrically propelled snow-sweeper. This sweeper was a specially constructed street car, with rotary sweepers or brooms under either end, used for the purpose of removing snow from the street car tracks. When in operation the front broom brushed the snow to the right side of the track. Each end of the sweeper was equipped with

a broom and headlight, and the car could thus be operated in either direction. When in operation the broom and headlight on the then front end only were used. At about 1:30 A. M. the sweeper proceeded north on the east track on Vermilion street to a point just south of the Big Four railroad crossing. As a train was approaching on that railroad the sweeper stopped about 125 feet south of the track, at a point near the convergence of the two tracks into a single track and just south of the place where the railroad gates were let down. Norman Dale, driving an automobile with defendant in error riding as a guest, was proceeding north on Vermilion street driving astride the east rail of the north-bound track. A few seconds after the sweeper stopped for the railroad crossing Dale ran his car into the rear end of it with such impact as to throw defendant in error into the wind-shield, whereby he received the injuries of which he complains. The automobile was driven under the rear end of the sweeper and its motor was forced back toward the body of the car. The automobile became so lodged that it required the assistance of another street car to pull it out.

Defendant in error testified that he was familiar with Vermilion street at the place of the accident and knew that the Big Four tracks crossed that street north of Davis street. He was on the right side of the automobile as Dale drove north. He testified that he was looking out at the side, paying attention to what was along the curb, so that he might warn the driver of any car that was parked out in the street; that the wind-shield in front of him was partly covered with snow, and that the first he knew of the presence of the snow-sweeper was an exclamation from Dale just before the automobile struck. He testified he did not see any light on the south end of the sweeper, that if there was any there he did not see it, and that there was no one there guarding the sweeper with a lantern, or a watchman with any lights. He testified that the auto-

mobile was not running over twenty miles an hour, and that the sweeper was not more than three or four feet away when he first saw it. He also stated that he did not see any lights in the sweeper until he got outside and could see what they ran into. He testified, also, that as they approached the Big Four tracks he heard an engine; that he did not know whether a cloud of smoke was between them and the tracks, but that they had been able, as they drove along, to see objects as they approached them.

Dale testified in substance the same as to the manner of his driving; that he had seen the light on cars along the street, some of which were forty or fifty feet away, and saw the bodies of the cars when he came within twenty feet of them. He testified, also, that the snow was dry, hard, frozen snow and was not wet so as to adhere to the wind-shield, and that there was no obstruction to prevent his seeing through the wind-shield. He also stated that he was familiar with Vermilion street and the railroad crossing; that he was driving fifteen or eighteen miles an hour when he heard what he thought was the steam from an engine, and that he slowed down and supposed he was running in the neighborhood of ten miles an hour when he collided with the sweeper. He testified there were no red or white lights or warning lights on the south end of the sweeper; that the lights were burning on his car, and that he had his dimmers on because he could see better. He testified that he did not see any lights inside the back end of the sweeper but that there were some windows there. His testimony also was that he could make out objects about ten feet ahead of the automobile. He stated on cross-examination that when he got out of the car he noticed there were lights on the inside of the sweeper. He stated that he could not see them from the rear but did not know why.

One John Cole testified for defendant in error that he drove to the scene of the accident and saw the sweeper

and car when he was about fifty or sixty feet away from them. He testified that there were no lights on the rear end of the snow-plow that he saw. He said there were lights inside the sweeper. It was storming when he went there. One Harold Leverenz and his wife also testified in substance the same. They likewise testified that there was no watchman with a lantern but that they saw the lights in the sweeper.

It is undisputed that this car, known as a "sweeper," had three windows in the rear; that these windows were about seven and one-half feet from the ground, and that there were nine 36-watt lamps on the inside of the car, all of which were lighted before and at the time of the accident. The cab of the sweeper extended the full length of the structure and over the sweeper on either end. There were no partitions in it. In fact, the lights just inside the rear windows were directly over the rear broom. The testimony of a witness for plaintiff in error who saw the accident is that Dale was driving at about thirty miles an hour.

The first question arising on this record is whether there is any evidence of negligence on the part of plaintiff in error. If not, it was the duty of the court to instruct the jury to return a verdict of not guilty. As we have seen, the first count of the declaration was a general count, which, without specification, stated that the injury was occasioned by the negligent operation of the sweeper by the plaintiff in error's servants. To sustain a verdict for damages for personal injuries it is incumbent upon the plaintiff to allege and prove the existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains and the failure of the defendant to perform that duty, which failure resulted in the injury. (*Miller* v. *Chicago and Northwestern Railway Co.* 347 Ill. 487; *Bremer* v. *Lake Erie and Western Railroad Co.* 318 id. 11; *McAndrews* v. *Chicago, Lake Shore and Eastern Railway*

*Co.* 222 id. 232.) The facts alleged and proved must be such as to bring the right of recovery within some statute or common law rule. (*Miller* v. *Chicago and Northwestern Railway Co. supra.*) It is not sufficient that the plaintiff's declaration allege generally a duty of the defendant but it must state facts from which the law will raise a duty, and it is necessary to show an omission of such duty resulting in injury. *Schueler* v. *Mueller,* 193 Ill. 402; Cooley on Torts, (2d ed.) 791; *Ayers* v. *City of Chicago,* 111 Ill. 406; 2 Thompson on Negligence, p. 1244.

The only ground upon which defendant in error seeks to sustain the judgment in this case is that plaintiff in error owed him a duty to in some manner warn him of the presence of the snow-sweeper in time to avoid a collision and that it neglected to perform that duty. There is here no charge of the violation of a statute, ordinance or any legal regulation, nor is it averred or proved that there is any legal regulation or requirement that plaintiff in error provide a warning light or flagman or watchman for the benefit of those approaching the car from the rear, where, as here, its street car comes to a momentary stop at a railroad crossing, as it is compelled by law to do. There is no allegation or proof that this sweeper did not have a right to stop where it did, but, on the other hand, it was the duty of those operating it to stop prior to crossing the railroad. There is the additional fact here that a train was approaching on the railroad track. There is no averment or proof that the sweeper was stopped at an unreasonable place or for an unreasonable time, nor is there averment or proof that plaintiff in error's servants knew, or should have known, that defendant in error was approaching the sweeper and likely to run into it. No facts are stated in the declaration and nothing appears in the proof from which it may be ascertained in what manner plaintiff in error was guilty of the violation of any legal duty resting upon it. It is undisputed that there

were lights burning in the sweeper inside the rear windows. There were no lights on the outside of its rear, but the wind and snow were coming from the northeast while the rear of this car was to the south, away from the direction of the wind. There is no evidence, nor can it be said to have been probable, that the rear windows were covered with snow or that there was anything to prevent the lights in the sweeper shining through the glass of those windows and so visible to one approaching the car from the rear. True, the whirling snow doubtless affected the distance which such light rays were thrown, but, as we have seen, witnesses for defendant in error, other than defendant in error and Dale, saw these lights more than fifty feet away. It is but a reasonable deduction from general knowledge, that an automobile traveling no faster than at the speed given by defendant in error and Dale could have been stopped within that distance. The only evidence in the record upon which counsel base their argument of insufficient light is the statements of defendant in error and Dale that they did not see the light. The fact that one does not see a light which he could have seen does not constitute evidence that the light was not there when the light was, in fact, visible. One may not look and fail to see where by ordinary use of his faculties he could have seen. (*Greenwald* v. *Baltimore and Ohio Railroad Co.* 332 Ill. 627.) All the evidence shows that the lights were burning in this cab. There was nothing in the circumstances surrounding this accident which would place upon plaintiff in error any duty to have anticipated that when it stopped its sweeper at this railroad crossing someone might run into the rear end of it. The fact in this case is that defendant in error's injury arose out of Dale's driving into the rear end of the sweeper and not from the sweeper running into the car.

While no case bearing a full analogy has been cited, courts of other jurisdictions have considered similar cases.

In *Gargan* v. *West End Street Railway Co.* 176 Mass. 106, 57 N. E. 217, the plaintiff sought damages from a street railway company because of injuries she received when she walked into a fender at the rear of a car while attempting to cross behind it. The place was dark and the fender not easily discernible. It projected about two feet beyond the car. The usual practice was to let the fender down at the front end of the car only, but by reason of its becoming disarranged without the knowledge of defendant's employee the one at the rear was down and projecting. The Supreme Judicial Court of Massachusetts held that such facts showed no negligence on the part of the defendant. It was there said: "Any vehicle stationary upon a highway over which travelers are passing and repassing may be an occasion of injury to them if they come in contact with it in consequence of their own motions. In such cases the test of the liability of the owner of the stationary vehicle to compensate for his injury the traveler who walks against it is not the probability that the traveler will be hurt if he walks against the vehicle, but is whether its owner was within his right in having such a vehicle or load stationary upon the street. * * * Nor would it be different if the traveler walked against such an obstruction in the night time, not seeing the obstruction on account of the darkness, if the owner of the vehicle had complied with such requirements as to lights as were in force at the place where the collision occurred. The case does not show that there were any such requirements, or that if there were they were not complied with by the defendant. We know of no requirement anywhere that a street car or other vehicle used at night upon a highway shall be so lighted that every part of it shall be plainly visible to those who come upon it in the rear as well as in front."

In *Kiley* v. *Boston Elevated Railway Co.* 207 Mass. 542, 93 N. E. 632, an action was brought against a street

car company for injuries to a boy coasting down a hill. The evidence showed that the motorman had stopped his car to let another boy, also coasting, pass in front of it, and the plaintiff coasted into the rear of the street car and was injured. Concerning the existence of negligence on the part of the defendant the court there said: "There is nothing in these facts to show any negligence of the motorman. He must necessarily keep the street in front of his moving car constantly within his view. He must also be alert at all intersecting streets to avoid collision with travelers who may be likely to come therefrom upon his tracks, but ordinarily he is not bound to be looking out for travelers who may run into the rear of his car. The establishment of such a standard of duty would prevent to a large extent the reasonably rapid carriage of passengers, for which street railway corporations are chartered."

In *Ryan* v. *Milwaukee Northern Railway Co.* 203 N. W. (Wis.) 340, it was said: "It is true, collisions may happen at the rear of a passing street car, but from the nature of things such collisions seldom occur, and if they do they are apt to be the result of negligence of some third person. It would seem a harsh rule to require a motorman to anticipate such collision in the absence of any known danger."

In *Michael* v. *Key System Transit Co.* 276 Pac. (Cal.) 591, it was held that to leave a street car standing on its tracks for a not unreasonable time was not negligence *per se*.

It is the general rule that a motorman operating a street car must keep the street in front of him constantly within his view. He is required to be alert at intersecting streets to avoid collisions with those likely to come upon the tracks, but ordinarily he is not bound to look out for those who may run into the rear of his car. To hold such to be a standard of duty would seriously and unnecessarily interfere with street car traffic. (25 R. C. L. 1245, and

cases there cited.) There is no averment or proof in this case that the motorman saw, or by the exercise of reasonable care ought to have seen, the defendant in error approaching from the rear. The accident was caused by the driver of the car in which defendant in error was riding. The collision was his act and distinguishes this case from those cited by counsel for defendant in error where two bodies, each lawfully present in a public street and each in motion, come into collision. This case is likewise to be distinguished from those where the injury is caused by the street car being driven upon the plaintiff.

The test of negligence in a case such as this is whether plaintiff in error had a right to stop its car in the place it was stopped for the length of time it was there, with the lights that it was shown to have, and whether, if it did so, it had any reason to believe that someone would run into it from the rear. A headlight was burning on the front of the car, and, as we have seen, nine lights were burning in the cab, which covered the full width and length of the car. This sweeper was not an apparatus so dangerous in itself that it should not be transported upon a public highway without unusual care for the safety of travelers going in the same direction. We know of no requirement of statute or common law, nor one arising out of the circumstances here, which would compel the operator of a street car of the type here involved to place additional lights on the outside of the rear of the car to warn those who might come upon it from that direction. *Gargan* v. *West End Street Railway Co. supra.*

Plaintiff in error's counsel also earnestly argue that the record in this case shows that as a matter of law both the driver of the automobile and defendant in error were guilty of contributory negligence. Since the record shows no negligence on the part of plaintiff in error it is not necessary to consider that question.

For the reasons herein assigned it was error to refuse to grant plaintiff in error's motion for a directed verdict at the close of all the evidence.

The Appellate Court erred in affirming the judgment of the circuit court. The judgments of the Appellate and circuit courts are reversed.

*Judgments reversed.*

SHAW and FARTHING, JJ., dissenting.