Lloyd Hill, as Administrator of the Estate of Karl Fugiel, Deceased, Appellant, v. Guy A. Richardson et al., Appellees.

Gen. No. 37,838.

Opinion filed June 26, 1935.

ALFRED O'CONNOR, of Chicago, for appellant; EARL J. WALKER, of Chicago, of counsel.

FRANK L. KRIETE, ABE R. PETERSON and ARTHUR J. DONOVAN, all of Chicago, for appellees; JOHN R. GUILLIAMS, of Chicago, of counsel.

MR. JUSTICE WILSON delivered the opinion of the court.

The plaintiff, Lloyd Hill, as administrator of the estate of Karl Fugiel, deceased, asks this court to reverse a judgment *non obstante veredicto* in favor of the defendants, Richardson and Cummings, as receivers of the Chicago Railways Company, a corporation, and others.

The action in the trial court was one for the death of Karl Fugiel, arising out of personal injuries alleged to have been caused by reason of the negligent operation of a street car at the intersection of Avenue "O" and 118th street in the City of Chicago.

After the evidence had been submitted to a jury and after a motion for a directed verdict by the defendants had been overruled, a verdict was returned in favor of the plaintiff for the sum of $4,500. Judgment was entered upon the verdict, a motion in arrest of judgment was overruled and upon a motion by the defendants for a judgment *non obstante veredicto*,

judgment was entered by the trial court in favor of the defendants. On this appeal we are asked to set aside the judgment *non obstante veredicto* and to enter judgment here upon the verdict in accordance with section 68, subsection (c) of the Practice Act, chapter 110, Cahill's Ill. Rev. Stat. 1933, ¶ 196. That section provides as follows:

"c. If the party in whose favor the verdict of the jury was rendered shall assign error in the Appellate or Supreme Court upon the order of the trial court entering judgment notwithstanding the verdict, and the Appellate or Supreme Court shall be of opinion that the trial court committed error in ordering or entering judgment notwithstanding the verdict, such court shall reverse such order and judgment and shall order or enter judgment in accordance with the verdict of the jury, unless it shall appear that there was error in the case that would have entitled the party in whose favor judgment notwithstanding the verdict was entered, to a new trial if such judgment had not been entered by the trial court, in which case a new trial shall be ordered."

There was no error which would have entitled the defendants to a new trial in the event of a verdict and judgment on the verdict. It is true that error was predicated by the defendants upon the admission of testimony introduced for the purpose of showing the custom of the defendants in operating its cars, to have them stop at the intersection of 118th street and Avenue "O" but we are of the opinion that this evidence was competent as bearing upon the right of the driver of the automobile, in which plaintiff's intestate was riding, to believe that the street car would stop before attempting to cross Avenue "O" upon which he was driving. *Thomas v. Buchanan,* 357 Ill. 270; *Chicago City Ry. Co. v. Sugar,* 117 Ill. App. 578; *Chicago City Ry. Co. v. Lowitz,* 218 Ill. 24.

The motorman testified that it was customary for other motormen to look around to see if the way was clear before they crossed over the highway. Several witnesses on behalf of the plaintiff testified as to the custom and it was not disputed that Avenue ''O'' was a State highway.

From the facts it appears that the accident happened in the nighttime and that it was dark; that the intersection where the collision occurred was in a thinly and sparsely settled part of the city; that the ground was marshy with weeds growing in all directions; that there was no cross street between 118th street and 130th street. From the photographs in evidence it appears that 118th street was not usable for traffic and that its only purpose appears to have been that of permitting its use for street car purposes. The nearest structure of any kind was that of the Republic Steel Company, whose plant was located two or three blocks from the intersection of these two streets. Avenue ''O'' was a through thoroughfare and at a short distance from its intersection with the street car crossing there was a sign, not lighted, which bore the legend ''R. R.'' It is doubtful whether or not this sign could have been seen by a motorist on a dark night such as the night upon which the accident occurred. The photographs introduced on behalf of the plaintiff show weeds and bulrushes growing to a considerable height, except upon the corner of Avenue ''O'' where it approaches the intersection with 118th street. A number of witnesses on behalf of the plaintiff testified that the photographs contained a correct view of the place with the exception of the fact that they did not show the weeds that were present on the night of the accident.

The defendants rely upon the fact that the street car was lighted from within so that it was visible to anybody for a great distance approaching the intersection. The testimony of the witnesses for the plain-

tiff would indicate that the bulrushes and weeds seriously interfered with the view of the approaching street car.

On the night of the accident Karl Fugiel, plaintiff's intestate, was riding home in the back seat of an automobile driven by one Tullio Paolichi. There were six men in the car, four of whom were in the back seat and plaintiff's intestate was sitting on the lap of one of these passengers. It was a question of fact as to whether or not by reason of his elevated position in the back seat he would have been able to see the approaching car.

Paolichi, the driver of the car, testified that he had driven over this highway a number of times and had noticed that the street cars stopped at the crossing. In this he was corroborated by a number of other witnesses. He testified that he was driving at a speed of about 25 miles an hour, and that when he first observed the street car it was about 60 feet from the crossing, and that he was of the impression that it was slowing down. He did not hear any gong and the street car struck his automobile in the side and pushed it about a car's length and swung it along onto the other side of the track. His automobile headlights were burning and he did not observe the crossing sign alongside of the road.

The motorman testified that the automobile struck the street car on the left side of the platform upon which he was standing. At the time of the accident the street car was proceeding in an easterly direction and the automobile was going south. If the automobile, as contended, ran into the side of the street car, it would appear that it was almost a physical impossibility for it to have reached a place south of the track on which the street car was proceeding. Both Avenue ''O'' and 118th street at this point were built up out of the marsh. Avenue ''O'' was a heavily

traveled street, being one of the few arteries of traffic running north and south through this particular district. This fact was known, or should have been known, to the motorman operating the street car.

A witness for the plaintiff by the name of Olczak testified that he was a representative of the Metropolitan Life Insurance Company and on the night of the accident was riding in the street car as a passenger; that as the car approached Avenue ''O'' it was going at the rate of 40 miles an hour and did not stop before reaching the intersection; that just before the crash the motorman ran back into the car and that after the accident the car proceeded clear across the intersection and the control of the street car had not been turned off. This witness also testified that the accident happened about 11 o'clock at night and that it was dark and that there were no lights at the street intersection; that on the night of the accident there were weeds on both sides of the street which were about 10 feet high and that where he was sitting in the street car the weeds were about five feet above the window; that Avenue ''O'' and the street car tracks were about four feet above the level of the ground. On cross-examination he testified that the top of the weeds were more than a foot higher than the level of the tracks. Upon being shown the photograph, he testified that he did not see the weeds in the picture as they were on the night of the accident.

The motorman, Schroeder, testified that the street car was lighted within and the headlights were burning and there were glass windows on the sides of the street car; that the automobile hit the side of the car and seemed to slide off the front corner; that he was accustomed to use his own judgment when he approached this crossing and that when he observed the automobile coming fast, it was about near the sign which was 150 feet from the crossing, and the front end of his street car was just up on the con-

crete of Avenue "O." The motorman testified he was 73 years of age at the time of the accident and could see the automobile coming all the time.

We have been referred by defendants to a number of railroad crossing cases where the rule appears as to the duty of a person approaching a railroad crossing. The latest decision on this question (not cited) is that of *Pokora v. Wabash Ry. Co.*, 292 U. S. 98, wherein an opinion delivered by Mr. Justice Cardozo comments on the opinion in the case of *Baltimore & O. R. Co. v. Goodman*, 275 U. S. 66, and in effect overrules it. The effect of this decision was that the conduct of the driver of an automobile at a railroad intersection is largely one of fact. The court in its opinion said: "The opinion in *Goodman's* case has been a source of confusion in the federal courts to the extent that it imposes a standard for application by the judge, and has had only wavering support in the courts of the States. We limit it accordingly."

Even though it may appear that the driver of the automobile was guilty of negligence, nevertheless, his negligence could not be attributed to plaintiff's intestate. The same degree of caution required of a motorist approaching a railroad crossing is not the same as that of a motorist approaching a street over which a street car is being operated. The right of a street car in the use of a street is not so paramount as to give it an exclusive right of way at street intersections. Both the motorman of the street car and the driver of an automobile have relative duties each toward the other. A railroad train runs on its own right of way and is not so easily handled as a street car. A street car operated over and across city streets should be kept under control. *Overstreet v. Illinois Power & Light Corp.*, 356 Ill. 378.

There is no direct evidence of contributory negligence on the part of plaintiff's intestate. The most that could be said is that he might have seen the

approaching street car. On the other hand, sitting as he did upon the lap of one of the other passengers in the automobile, his back may have been toward the approaching street car and he may not have seen it at all. This question was under consideration in a recent case before the Supreme Court of this State in. *Thomas v. Buchanan*, 357 Ill. 270. The court in its opinion in that case said:

"It is contended by the defendant, under the facts proved, that Anderson was guilty of negligence which contributed to the happening of the accident, and that therefore that question becomes one of law and not of fact. The question of contributory negligence is ordinarily one of fact for the jury to decide under proper instructions. Contributory negligence becomes a question of law only when it can .properly be said that all reasonable minds would reach the conclusion, under the facts stated, that such facts did not establish due care and caution on the part of the person charged therewith. *Chicago and Eastern Illinois Railroad Co. v. Crose*, 214 Ill. 602; *Morrison v. Flowers*, 308 id. 189.

. . . . . .

"While the deceased was required to exercise due care and caution for his own safety while riding in the automobile of Anderson, yet, so far as the evidence discloses, he had no authority over Anderson in the operation of the automobile, and no agency being shown, the negligence of Anderson, if any, cannot be imputed to the deceased in a suit brought by his legal representative against a third person to recover damages for injuries sustained by him which occasioned his death. (*Nonn v. Chicago City Railway Co.*, 232 Ill. 378.) The question of due care on the part of plaintiff's intestate is always a question of fact to be submitted to a jury whenever there is any evidence in the record which, with any legitimate inference that may reasonably and legally be drawn therefrom,

tends to show the exercise of due care on the part of the deceased. We are not able to say, under the facts proved, that the conduct of Anderson at and immediately prior to the collision in question was such as to have warranted the trial judge in deciding, as a matter of law, that either Anderson or Thomas was guilty of contributory negligence. If Thomas was not guilty of contributory negligence and was merely a passenger or guest of Anderson, the trial court would not have been warranted in instructing the jury to find for the defendant.''

It cannot be said in the case at bar that plaintiff's intestate was guilty of such conduct as to raise an inference in all reasonable minds that he was guilty of such conduct as would constitute contributory negligence as a matter of law.

There is still another factor in the case at bar which would require the submission of the question of contributory negligence to the jury. The action is one by an administrator to recover for the death of his intestate. Under such circumstances in the absence of evidence to the contrary, there is a presumption that all persons observe the instincts promoting the preservation of life. This natural and human instinct is a powerful factor in governing the action of the individual. The law recognizes it and has classed it as a legal presumption. Standing alone it is sufficient to take the question of due care to a jury. Under such circumstances it is not necessary to prove due care by direct and positive testimony, but the rule is that contributory negligence should not appear from the evidence presented on behalf of the plaintiff. The rule is well expressed in *Cleveland, C., C. & St. L. Ry. Co. v. Keenan,* 190 Ill. 217, where the court in its opinion lays down the rule:

''The question whether Kerr was guilty of contributory negligence was a question of fact to be passed upon by the jury, and while the burden of proof was

upon the plaintiff to show that Kerr was in the exercise of due care for his own safety, it did not devolve upon him to establish such due care by direct and positive testimony, but such due care might be inferred from all the circumstances shown to exist immediately prior to and at the time of the injury, and in determining such question the jury might properly take into consideration the instincts prompting to the preservation of life and avoidance of danger. (*Terre Haute and Indianapolis Railroad Co. v. Voelker*, 129 Ill. 540; *Illinois Central Railroad Co. v. Nowicki*, 148 id. 29; *Baltimore and Ohio Southwestern Railway Co. v. Then*, 159 id. 535; *Chicago, Burlington and Quincy Railroad Co. v. Gunderson*, 174 id. 495.) We are of the opinion the court did not err in declining to take the case from the jury.''

Such being the case, it would answer no good purpose to remand this cause for a new trial. There are ample facts in this case which would warrant its submission to a jury and we are of the opinion that the trial court in entering the judgment *non obstante veredicto*, was not acting in accordance with the provisions of the Practice Act as it now exists. Therefore, the action of the superior court in entering judgment *non obstante veredicto* is set aside and judgment is entered here in accordance with the verdict rendered.

*Judgment reversed and judgment here.*

Hebel, P. J., and Hall, J., concur.