Arvil Russell and Robert Russell, by Othal Russell, Father and Next Friend, Appellees, v. Consolidated Forwarding Corporation, Inc., Appellant.

Gen. No. 9,531.

Opinion filed February 24, 1947. Released for publication March 24, 1947.

EARL S. HODGES, of Springfield, for appellant; DUANE L. TRAYNOR, of counsel.

HARRY BROVERMAN, HARRY B. GRUNDY and SCOTT HOOVER, all of Taylorville, for appellees.

MR. PRESIDING JUSTICE DADY delivered the opinion of the court.

In an automobile truck collision case the defendant appeals from a judgment in favor of two plaintiffs, based on the verdict of a jury.

The accident occurred on November 2, 1943, about 10 p. m. on State Route 66. The highway ran in a northerly and southerly direction. For some distance north and south of the place of the accident the pavement had been recently repaired. At each place where repairs had been made there was a barricade which blocked traffic on the easterly half of the pavement at such point. At each barricade there were located from two to four pot flares which were lighted and

burning. The distance between the barricades varied, some being quite close together and some a considerable distance apart. The nearest barricade south of the place of the accident was about 500 feet distant. Between the barricades cars were permitted to travel on the easterly half of the road.

Plaintiff—Arvil Russell—was driving his automobile northerly towards the City of Springfield. The other plaintiff, Robert Russell, who was a nephew of Arvil Russell, was riding in the automobile as a passenger or guest. The defendant's truck was also being driven northerly toward the same city. The weather was clear, and the road was straight and paved with concrete.

Defendant's truck was of the tractor trailer type, about 35 feet in length and about 8 feet in width at the rear.

At the time of the accident defendant's truck was standing still a few feet south of one of the barricades, waiting for a south bound automobile to pass on the westerly half of the pavement. While the truck was so standing, Arvil Russell, then traveling on the easterly half of the pavement, drove his automobile into the rear of the truck in such a manner that the front of the automobile ran into and became wedged under the rear of the truck. Each plaintiff was severely injured. Judgment for Arvil Russell was in the amount of $15,000 and judgment for Robert Russell was in the amount of $4,000. A prior judgment in this case of $10,000 for Arvil Russell and $2,000 for Robert Russell was reversed and remanded by us for a new trial in the case of *Russell v. Consolidated Forwarding Corp., Inc.,* 327 Ill. App. 204.

The specific negligence charged in the complaint was that the defendant failed to display on the rear of the truck three red lights approximately six inches apart, plainly visible at a distance of 500 feet, in violation of par. 201, ch. 95½, Ill. Rev. Stat. 1945 [Jones Ill. Stats.

Ann. 85.233], and that the defendant failed to display any light on the rear of the truck, and failed to give any warning of his presence on the highway to persons who might at that time and place have reason to be using said highway, and that the defendant "stopped its motor vehicle in a position immediately south of a flare and obstruction previously placed on said highway by persons repairing said highway, and in such a manner to obstruct the visibility of said flare and obstruction from persons who at that time and place have reason to be using said highway."

Prior to the collision defendant's truck had traveled several miles northerly on Route 66, while the Russell car entered Route 66 at Pawnee Junction, which was about two miles south of the place of the collision.

Arvil Russell and Robert Russell were the only witnesses for the plaintiffs on the question of what took place at and immediately before the time of the collision. On the same subject five witnesses testified for the defendant, *viz.*, Marland Mowry, who was the driver of the truck that was in the collision, Harry Haworth and Paul Smith, each of whom was also driving a truck northerly, Arthur Fox, who was a State police officer, and A. W. Hiler, who was driving a Ford car immediately in front of the Mowry truck.

Arvil Russell testified that his brakes were perfect, that while driving 35 miles an hour he could see ahead about 150 feet with his bright lights on, and about 75 feet with his dim lights on, that when he drove around the last barricade, being the first barricade south of the place of the collision, he saw a south bound car about a quarter of a mile to the north, that when such south bound car was within two-tenths of a mile or about 1000 feet distant he saw that the south bound car had very bright lights on, that such lights then bothered him, that he wouldn't say such lights then bothered him, that he gave such car his dims, but the south bound car continued with its bright lights so he

then flicked his dim and bright lights off and on, that the south bound car was "right at" him and did not have on its dim lights until it was 25 or 30 feet distant, that the lights of the south bound car partially blinded him and he did not think he could see 35 feet ahead at the time the south bound car put on its dim lights, that at that time he could not see anything to the north, could not see any distance beyond the front of his car, that at such time he had his dim lights on and continued to drive north for about 40 feet at about 35 miles an hour when he could not see ahead, and did not reduce his speed or apply his brakes or reduce acceleration, and that just as the two cars were abreast of one another he collided with an object "which might have been a brick wall," and was rendered unconscious and taken to a hospital. He further testified that after passing the last barricade he saw no red lights and saw no lights at all other than those on the south bound car and saw no flares.

Robert Russell testified that he could see 200 feet ahead with the bright lights on and 150 feet with the dim lights on, that his uncle was driving about 30 or 35 miles an hour, that just prior to the collision the south bound car had on its bright lights, that his uncle then put on his bright lights and then his dim lights and then the driver of the south bound car dimmed his lights, that from the time when the south bound car was about 500 feet north of the place of the collision and the Russell car was about 500 feet south of the place of the collision, the south bound car had on its dim lights and did not interfere with Robert Russell's vision, that the lights on the south bound car "partially blinded you to a certain extent," that with the on-coming car approaching he could not see 150 feet ahead like he could if the other car was not approaching, but he could see approximately 50 or 75 feet ahead, and just as they met the south bound car he could see about 50 feet ahead, that he did not tell his

uncle that he could see only 50 feet ahead, that he did not see the truck until they hit it, and prior to the collision he did not see any red lights or flares or lights on the object which they hit, and there were no lights on the object that they hit. He further testified that immediately after the collision he looked at the front and rear of the truck and there were then no lights on the front or rear of the truck.

Mowry testified that as he approached the barricade there were two cars ahead of him and there was ''traffic coming from the north and he pulled in behind this barricade, and as soon as'' the south bound car ''went by this other car went ahead and the other one did not have time to make it, so he stopped. I pulled up behind him and stopped and just about the time the traffic got through he started up and I was getting ready to start when I heard a crash''; and that the collision took place at a time when a south bound car was about even with the truck. He further testified that the rear end of the truck was of an orange color with blue and white stripes, and that the rear of the truck was equipped with nine or ten lights that could probably be seen a couple of miles, three red lights in a row underneath and three across the top, and had one four inch reflector on each corner of the tailgate; that the head lights on the truck were on, and that from the reflection in his rear vision mirror he could see that the lights on the rear of the truck were lighted at the time of the collision.

Haworth testified that he was driving another truck belonging to the defendant northerly behind the Mowry truck, that he first saw the plaintiff's car at Pawnee Junction, which was two miles south of the place of the collision, and followed such car until the collision, and at the time of the collision was about 300 to 450 feet south of the Mowry truck; that on the rear of the Mowry truck there were two red lights at the top of the truck and three red lights at the bottom,

and red reflectors on each corner, and that shortly before the accident he saw that all of such lights were lighted.

Smith was driving his truck northerly behind the Haworth truck. At the time of the accident he was not in the employ of the defendant, but at the time of the trial he was in such employ. He testified that at the time of the collision he was about five or six hundred feet south of the place of the collision, and that about two miles south of the point of the collision he had noticed that the lights on the rear of the Mowry truck were all lighted, two red lights at the top and three red lights at the bottom.

Hiler testified that he had passed the Mowry truck about half a mile south of the place of the collision and that the rear lights on the truck were then lighted, that just before the collision he was immediately ahead of the truck and stopped at the barricade to let south bound traffic pass him, and that through his rear vision mirror he then noticed that the head lights on the truck were lighted, that when he came to the barricade he stopped to let south bound traffic pass, and was driving around the barricade when he heard the collision, that he then stopped on the shoulder north of the barricade and walked back to the scene of the collision, and then observed the lights on the rear of the truck and that three of such lights near the middle and one on each corner were then burning.

Fox testified that he arrived at the scene of the accident shortly after the collision and that when he so arrived the front lights and the top rear lights on the truck were then lighted.

The errors assigned and argued are that, (1) the court erred in denying defendant's motion for a directed verdict at the conclusion of all of the evidence, (2) the verdict is against the manifest weight of the evidence, (3) the damages awarded are excessive, and (4) the court erred in giving and refusing instructions.

 The first error assigned is based on the contention that as a matter of law the plaintiffs were guilty of contributory negligence and no actionable negligence on the part of the defendant was shown. It is our opinion that we cannot properly say as a matter of law that the evidence most favorable to the plaintiffs does not show or tend to show due care on the part of the plaintiffs and actionable negligence on the part of the defendant. Therefore the court did not err in refusing to direct a verdict for the defendant.

██ ██ As to the second error assigned, it is our opinion, after a careful consideration of all the evidence, that as the case is now presented the verdicts are against the manifest weight of the evidence, both on the question of due care of the plaintiffs and on the question of actionable negligence on the part of the defendant.

In view of the fact that the judgment must be reversed and the cause remanded for a new trial, we express no opinion on the question of the damages being excessive.

Plaintiffs' instruction No. 1, as modified by the court and given, told the jury that the plaintiff Arvil Russell charges that "the defendant operated its motor vehicle in a negligent and careless manner, and that said negligence consists of the following acts and omissions; (1) . . .; (2) . . .; and (3) That said defendant stopped its motor vehicle in a position immediately south of a flare and obstruction previously placed on said highway by persons repairing said highway, and in such a manner to obstruct visibility of said flare and obstruction from persons who at that time and place have reason to be using said highway," and that if they believed from the evidence that said plaintiff "has proven by the preponderance of the evidence those allegations or any one of those allegations," and that said plaintiff was in the exercise of due care for his own safety ". . . and if you

believe that the conduct of the defendant was negligent'' and that as a proximate result of such negligence the said plaintiff sustained damages, then the jury should find the issues in favor of said plaintiff.

Plaintiffs' instruction No. 3 as so modified and given, was in identical language, except that the name Robert Russell was inserted in place of the name Arvil Russell.

These were mandatory instructions. Each of them, in effect, told the jury that if they believed that the conduct of the defendant in so stopping its truck was negligence, then the jury should find the defendant guilty, regardless of whether or not the rear of the truck was lighted as required by law. The undisputed evidence shows that the truck was stopped momentarily just south of the barricade for the sole purpose of permitting approaching south bound traffic to pass the barricade so that the truck could drive to the left of the barricade when approaching south bound traffic had passed, and then proceed northerly. Not only did the truck driver have the right to so stop his truck, but the undisputed evidence shows he was compelled to do so. Of course the truck, being about 35 feet in length and about 8 feet in width, necessarily obstructed the visibility of the barricade and flares. It is our opinion that there is no evidence fairly tending to show any negligence on the part of the defendant in the mere stopping of its truck as it did and that therefore the giving of these instructions was reversible error. (See *Overstreet v. Illinois Power & Light Corp.*, 356 Ill. 378.)

All of the plaintiffs' instructions used the words ''as claimed'' instead of the words ''as charged in the complaint.'' The jury might well believe that the words ''as claimed'' referred to the argument of counsel for the plaintiffs, instead of to the complaint. This criticism will doubtlessly be obviated on a new trial.

We do not consider that there was any error in the refusal of any of the instructions asked by the defendant.

For the reasons indicated the judgment of the trial court is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*