(No. 4573—▮▮▮▮)

LILA M. DALY, ADMINISTRATOR OF THE ESTATE OF JESSIE BERNARD DALY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 23, 1954.*

ALBERT SCOTT and WALTER J. SEBO, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

TOLSON, C. J.

Lila M. Daly filed this claim on September 18, 1953 as the widow of Jessie Bernard Daly, and as the mother and next friend of his three minor children.

The complaint was later amended by joining Lila M. Daly as administrator of the estate of Jessie Bernard Daly.

The record consists of a verified complaint, transcript of evidence, amended complaint, abstract of evidence, statement, brief and argument of claimant, statement, brief and argument of respondent, and reply brief of claimant:

The claim is predicated upon the alleged wrongful death of Jessie Bernard Daly on March 21, 1953. On the said date, at about 15 minutes before 2:00 P.M., Mr. Daly left his home, where he resided with his wife, Lila M. Daly, and their three minor children. He told his wife that he was going for a ride on a motorcycle, which he owned, and that he would return shortly. At about 2:00 P.M., the witness, Raymond Thurman, was driving south on Route No. 78 toward Canton, Illinois. As he came over a grade in the road, he saw a motorcycle in his lane of the road, and lying between his car and the motorcycle was the body of Jessie Bernard Daly. He was lying with his feet and legs on the pavement, and the rest of the body was off of the pavement on the west side of the road to the north of the entrance to the Canton Country Club. Thurman did not see the accident happen. He stopped as soon as he could, and covered the body with a blanket. Mr. Daly was not moving, and was not able to talk. He died from the injuries received, and it was subsequently discovered that he had suffered a rupture of the aorta. There apparently was no eye witness to the accident.

Route No. 78, north from the city of Canton, Illinois, was originally constructed by the County of Fulton, but in 1928 the Department of Public Works and Buildings took over this section of highway, and

made it a part of Route No. 78. Since that time the highway has been maintained by the Division of Highways. In 1945 the brick and concrete pavement was covered with a bituminous mixture, which is a so-called "black top". The pavement is bordered on the east side by an earth shoulder seven feet in width. On March 21, 1953, a tree was located on the east border of the highway, at a point just south of the entrance to the Canton Country Club. It was from 12 to 20 inches from the edge of the pavement, and the roots extended under the pavement. The motorcycle was between 20 and 30 feet north of the entrance to the Canton Country Club, and Mr. Daly's body was about 5 feet beyond it. The north edge of the entrance to the Country Club is approximately 55 feet north of the tree in question. The bark of the tree was marked, as though it had been struck, and there appeared to be bits of flesh on the tree. Immediately to the south of the tree was a concrete culvert headwall, 29 feet long, standing 12 inches above the ground, and 28 inches from the edge of the pavement. The witness, David Settles, a State Highway Policeman, testified that to the south of the tree he saw no skid marks, but he did see tire marks, which started just south of the south edge of the headwall of the culvert, and ended at the tree. He assumed that the tire marks were made by the motorcycle of Mr. Daly. The handlebars and right side of the motorcycle were damaged. The shoulder, where the marks were located, was a mixture of dirt, sand and rock, with a little grass. It was dry, but neither hard nor soft. There was no indication in the marks of any sliding or skidding, or any indication that the motorcycle had turned back onto the pavement after leaving it south of the headwall. There

were no skid marks between the tree and the motor-cycle, but there was a scuffed mark where the motor-cycle may have hit the pavement.

The accident apparently occurred about 2:00 P.M. It was daylight, the pavement was dry, the day was windy, and the wind was blowing in gusts. The tree in question was a big tree, which had been growing there for many years. Mr. Daly had been riding a motor-cycle for at least ten years, and was considered a good driver. The motorcycle, which he was riding, had been owned by claimant for approximately two years. Mr. Daly had lived in Canton most of his life, and had been upon this road many times. He had travelled this road as recently as two or three days before the accident.

Claimant has advanced the theory that the decedent was forced off of the road by a tremendous gust of wind, and that the State was negligent in permitting a tree to remain adjacent to the right-of-way, thereby creating a hazard and a nuisance; and, concludes that the rule of law in Illinois, as disclosed in the case of *City of Joliet* vs. *B. S. Shufelt*, 144 Ill. 403, applies in this case, and that claimant is entitled to recover. A portion of said case reads as follows:

"In *Joliet* vs. *Verley*, 35 Ill. 58, we held that if a plaintiff while observing due care for his personal safety was injured by the combined result of an accident and the negligence of the City or Village, and without such negligence his injury would not have occurred, the City or Village will be liable, although the accident may have been the primary cause of the injury, if the consequences could, with common prudence and sagacity, have been foreseen and provided against."

Since there were no eye witnesses to the accident, claimant was permitted to offer evidence as to the reputation of the decedent for being a careful driver, and when such evidence is admitted, the law presumes that persons so testifying have also observed in claim-

ant instincts of self-preservation. *Hills* vs. *Richardson*, 281 Ill. App. 75.

Respondent contends that: (1) The State is not an insurer against all accidents upon its highways, but is required only to keep the highways in a reasonably safe condition. *Terracino* vs. *State*, No. 4420, filed on January 8, 1952; (2) The user of a highway is under a duty to exercise care, commensurate with the conditions known to exist. *Duffie, Et Al,* vs. *State*, 19 C.C.R. 40; and, finally, that claimant must prove the exercise of due care and caution, and that the burden of proof is upon claimant to establish her claim by a preponderance of the evidence.

Counsel for claimant has developed an ingenious theory, and has supported it by a scholarly brief. However, this Court, in order to accept the theory, must conclude that the motorcycle was forced off of the road by a gust of wind *to the exclusion of any other cause.*

It is generally conceded that motorcycle travel is a hazardous undertaking, and, beyond all dispute, more hazardous than driving a conventional automobile.

Mr. David Settle, a State Highway Policeman and a witness for the claimant, testified that he had driven a motorcycle for many years as a State Police Officer, and that a wind of such velocity, as was that on March 21, 1953, could appreciably affect the path of a motorcycle, and that such a wind could alter the course of a motorcycle for half the width of the highway in question. He also stated that you cannot turn the front wheel of a motorcycle when it is being ridden, but that you can control it by shifting your weight, and that, if you shift your weight too far, you might fall off, or cause the motorcycle to skid.

It is pure conjecture on the part of the claimant to conclude that the motorcycle was forced off of the road by a gust of wind to the exclusion of any other cause. This hypothesis is reasonable, and it may in truth be the fact, but it is still a hypothesis. If it is possible to turn a motorcycle by the mere shifting of the weight of the body of the driver, it is just as reasonable to assume that the decedent shifted his weight, and caused the motorcycle to leave the pavement.

If the burden of proof, which the complainant must assume, is based on a hypothesis, coupled with a presumption of due care, it becomes quite obvious that the claimant's case is not grounded on direct and conclusive evidence, but is a mere possibility, and, therefore, falls short of the requirements of proving a case by a preponderance of the evidence.

Taking the complainant's theory in its most favorable light, i.e., that a gust of wind forced the motorcycle off of the pavement, the Court is then presented with the problem as to whether or not the decedent drove the motorcycle commensurate with the conditions, which were known to exist, and, since driving a motorcycle under such conditions presents extraordinary risks, this Court cannot say that a general reputation for being a good driver will satisfy this requirement of the law.

There is no dispute with the law, as is presented in the case of *Joliet* vs. *Shufelt, supra,* but the distinction between the two cases is quite evident. In the Shufelt case, the cause of the initial accident was a broken driving rein. In the instant case, the Court does not know by a preponderance of the evidence what caused the initial accident, and must, therefore, conclude that

the line of cases presented by the claimant are not controlling.

The presence of the elm tree, located adjacent to the highway, undoubtedly presented a needless hazard to the driving public, but this Court cannot say that its location was negligence per se. If the evidence in this case disclosed that the decedent struck the head-wall of the culvert instead of the tree, there would be no question but what the Court would be obliged to deny liability. The fact that the tree was closer to the highway than the culvert is not such a distinction in fact, which would enable the Court to arrive at any different conclusion, for the fact remains that the travelled portion of the highway was in good repair, and provided adequate and safe use under normal conditions.

For the reason that claimant has failed to prove her case by a preponderance of the evidence, the claim must be denied.